UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-20106-CR-SCOLA

UNITED STATES OF AMERICA,

      Plaintiff,

  v.

PATRICK KILLEN, JR.,

      Defendant.

_____/

**RESENTENCING MEMORANDUM
IN RESPONSE TO GOVERNMENT (DE 177)**

**The Holding of the Court of Appeals that Mr. Killen's sentence was
substantively unreasonable prevents this Court from
re-imposing the same sentence**

In its sentencing memorandum, the government argues that on appeal, the Eleventh Circuit "did not hold that [Mr.] Killen's 139-year sentence was per se unreasonable, nor did the panel impose any upper or lower bound on the range of sentences that this Court could consider on remand."   (DE 177:1).   That is simply an incorrect reading of the panel's decision in Mr. Killen's appeal and of the established precedent of the Eleventh Circuit.   The government's' argument confuses a holding that a sentence is **procedurally** unreasonable with a holding that a sentence is **substantively** unreasonable.

The opinion from the Eleventh Circuit is quite clear.   On appeal, Mr. Killen argued that his sentence was both procedurally unreasonable and substantively

1

unreasonable. In its opinion, the Eleventh Circuit made clear that there was NO procedural error in the calculation of the Sentencing Guidelines. *Killen*, at 26-28. The Court concluded that Mr. Killen's sentencing offense level remained at a level 43. *Id*. at 28. The Court then expressly concluded that "Mr. Killen's sentence did not result from procedural error." *Id*.

The Court then stated that, "[h]owever, our careful consideration has led us to conclude that his sentence is **substantively** unreasonable." *Id*. (emphasis added). In reaching that conclusion the Court noted the incorrect statement of law made by the district court when it stated that "sentencing disparity is not a recognized basis for a sentence to be imposed." *Id*. In a footnote following that very quote that the government clings to now, the Court explained that ignoring a relevant factor may support a finding that a sentence is substantively unreasonable, citing *United States v. Pugh*, 515 F.3d 1179, 1194 (11th Cir. 2008). *Id*. at n.10. In the footnote, the Court also noted that failure to consider a relevant sentencing factor may also support a finding or procedural error. *Id*. However, as noted above, the Court had already ruled that there was no procedural error in the sentencing calculus.

The Eleventh Circuit has made it clear a finding that a sentence is **substantively** unreasonable occurs when the Court is "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by **arriving as a sentence that lies outside the range of reasonable sentences dictated by the facts of the case**." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. ) (*en banc*) (emphasis added) (quoting

2

*Pugh*, 515 F.3d at 1191).    When the Court of Appeals determines that a sentence is substantively unreasonable, it is clear that a court on remand cannot simply apply that same sentence, as the government suggests, since it would remain a substantively unreasonable sentence.   *See Irey*, 612 F.3d at 1222 (vacating a sentence of 210 months' imprisonment and remanding for the imposition of a sentence at the statutory maximum of 30 years); *Pugh*, 515 F.3d at 1204 (vacating a sentence of probation and no supervised release and remanding for a sentence that would include jail time and supervised release).    That is precisely the gravamen of a determination that the substance (i.e. the length) of a sentence is unreasonable.

As the Panel noted in footnote 10, failure to consider a sentencing factor may form the basis for a finding of procedural error.   And perhaps the government is confused in treating the prior district court's statement as a procedural error that can now be rectified by this Court:

> The 11th Circuit vacated [Mr.] Killen's sentence here because, by its reading of the record, the previous district court did not consider all of the applicable § 3553(a) factors.   For the reasons explained below, this Court should – after considering all of the relevant § 3553(a) factors – impose the advisory Guidelines sentence (or the same sentence imposed in [Mr.] Killen's first proceeding) here.

(DE 177:15).    However, the government's request goes against the express language of the Panel's opinion and the controlling precedent which make clear that the previously-imposed sentence of 139 years' imprisonment, really Life without the possibility of parole, was substantively unreasonable and that this Court cannot resentence Mr. Killen to 274 years' imprisonment or 139 years' imprisonment or any

other sentence that would equate to a Life sentence without the possibility of parole. Such a sentence would clearly violate the mandate of the Court of Appeals.  *See United States v. Tamayo*, 80 F.3d 1514, 1520 (11th Cir. 1996) (explaining the limitations placed on district courts by the mandate rule following a remand).

**The Panel's Opinion Requires a Sentence Substantially Below 35 Years**

The government argues that the Eleventh Circuit's direct comparison between Mr. Killen and underlying facts of his offenses and those of the defendant in *United States v. Kapordelis*, 569 F.3d 1291, 1317 (11th Cir. 2009), did not provide any direct guidance to this Court as to the appropriate sentence.   (DE 177:12). However, that is incorrect.   The Eleventh Circuit expressly analyzed the stark differences "of the defendant's conduct in *Kapordelis* to that of Mr. Killen," in regard to sentencing disparity.   The Eleventh Circuit noted that "Mr. Killen had no hands-on contact with a minor during the less than 2-year period of his criminal conduct, let alone a 20-year history of drugging and molesting them or traveling for the express purpose of having sex with a child."  *Killen*, at 29.   The Eleventh Circuit also noted the substantial mitigating factors weighing heavily in favor of a lower sentence for Mr. Killen.   Citing the affirmance of a 35-year sentence for Kapordelis, the Panel Opinion can only be read as noting that a proper consideration of sentencing disparity would yield a sentence for Killen substantially less than the 35-year sentence approved for Mr. Kapordelis.

In contrast, the Government continues to cite to cases which actually serve to underscore the need for a substantially lower sentence for Mr. Killen.   In *United*

*States v. Sarras*, 575 F.3d 1191 (11th Cir. 2009), the appellate court affirmed a 1,200-month sentence.   In *Sarras*, a step-father, who had divorced the mother of his step-daughter, repeatedly sexually abused his young step-daughter while she spent the night at his house three times a week.   *Id*. at 1196.   Specifically, the defendant had sexual intercourse with his young step-daughter more than ten times and forced her to perform oral sex on him more than ten times.   The defendant filmed the sexual abuse.   *Id*.

In *United States v. Johnson*, 451 F.3d 1239 (11th Cir. 2006), the appellate court affirmed a 140-year sentence imposed on a producer and distributer of child pornography.   One victim, a boy, was just eight years-old when the defendant began sexually abusing him.   The sexual abuse continued for six years and "the incidents were 'too many to count.'"   *Id*. at 1241.   The defendant filmed the sexual abuse.   In addition, when the boy was just nine years-old, the defendant drugged the boy and had two adult males sexually abuse the boy while the defendant filmed the sexual abuse.   *Id*.   There were two other victims.   The defendant abused one victim from the age of fourteen to sixteen and another from the age of thirteen to fourteen. *Id*.   The defendant filmed that sexual abuse as well.   The defendant both possessed and transmitted videos depicting the sexual abuse of children.   *Id*.   In addition, the defendant had two prior convictions in state court involving lewd acts and children. *Id*.

In *United States v. McGarity*, 669 F.3d 1218 (11th Cir. 2012), the appeallate court reviewed the convictions of seven defendants convicted as part of a

"cooperative, multi-national criminal investigation directed at tracking a sprawling international child pornography ring, comprised of as many as 64 known individuals sharing more than 400,000 images and 1,000 videos of child pornography across at least six countries." *Id*. at 1228.   In addition to numerous child pornography charges, all defendants were "tried and convicted of engaging in a child exploitation enterprise ('CEE'), in violation of 18 U.S.C. § 2252A(g)." *Id*.   Some of the defendants had prior instances of sexual abuse and two had previously sexually abused their own, young children.   *Id*. at 1259, 1260.   Another had a prior conviction for enticing a minor into engaging in sex.   *Id*. at 1262.

The government would like to lump Patrick's offenses with these cases and have the court apply a blanket life sentence for any and all producers of child pornography.   But while Patrick may have technically produced child pornography, just as the defendants in *Sarras*, *Johnson* and *McGarity* did, Patrick's offenses pale in comparison to the brutal rape of young children committed by those defendants over a substantial period of time.

## This Court Cannot Simply Stack the Statutory Maximum Sentences for Each Count as Requested by the Government

The government states, without citation to any authority, that this Court can simply stack the statutory maximum sentence for each count of conviction and impose that sentence on Mr. Killen.   That is actually contrary to the applicable law regarding the imposition of consecutive sentences.   Federal law mandates that

"[m]ultiple terms of imprisonment imposed at the same time run concurrently, unless the court orders or statute mandates that the terms are to run consecutively." 18 U.S.C. § 3584(a).   "The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, **shall consider, as to each offense for which a term of imprisonment is being imposed**, the factors set forth in section 3553(a)." 18 U.S.C. § 3584(b).   The Sentencing Guidelines also requires the court to determine the maximum sentence for each count.   USSG § 5G1.2(b).   But in terms of whether to impose concurrent or consecutive terms, § 5G1.2(c) requires the court to look at the count with the highest statutory maximum and if the sentence for that count is "adequate to achieve the total punishment, then the sentence on all counts **shall** run concurrently."   That is, once the Court arrives at the appropriate sentence, no more stacking is allowed.

The three production counts (1,3,5) carry the highest sentence (15-30 years). Pursuant to the statute and the Guidelines, the court has to look at those counts, apply the 3553(a) factors to those and determine the appropriate sentence for each of those counts.   Once the Court has arrived at the appropriate sentence, no more stacking is allowed and the remaining counts must be run concurrently.

### Imposition of a sentence of Life without the possibility of parole on a young, non-violent, immature first-time offender violates the Eight Amendment

The Eighth Amendment prohibits the imposition of cruel and unusual punishment.   U.S. Const., amend VIII.   And, "[t]he Eighth Amendment's prohibition of cruel and unusual punishment 'guarantees individuals the right not to

7

be subjected to excessive sanctions.'" *Miller v. Alabama*, 132 S. Ct. 2485, 2463 (2012) (quoting *Roper v. Simmons*, 543 U.S. 551, 560, 125 S. Ct. 1183 (2005)). "That right [] flows from the basic 'precept of justice that punishment for crime should be graduated and proportioned' to both the offender and the offense." *Id.* (quoting *Weems v. United States*, 217 U.S. 349, 367, 30 S. Ct. 544 (1910)). "The concept of proportionality is central to the Eighth Amendment." *Graham v. Florida*, 130 S. Ct. 2011, 2021 (2010).

The Supreme Court has identified two general classifications of cases addressing the proportionality of sentence under the Eighth Amendment. *Graham*, 130 S. Ct. 2021. In the first classification, the court looks at the specific circumstances of the particular case to determine whether the sentence imposed is unconstitutionally disproportionate. *Id.* In the second classification, the court employs a categorical approach focusing on two subsets – the nature of the offense and the characteristics of the offender. *Id.* at 2021, 2022.

As to the first classification, the Court "must begin by comparing the gravity of the offense and the severity of the sentence." *Id.* at 2022 (citing *Harmelin v. Michigan*, 501 U.S. 957, 1005, 111 S. Ct. 2680 (1991) (opinion of Kennedy, J.)). If that initial comparison leads to a "'an inference of gross disproportionality' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with sentences imposed for the same crime in other jurisdictions." *Id.* "If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual." *Id.*

Mr. Killen is being sentenced under a federal sentencing system that came into being with the passing of the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (SRA).  The SRA created a new system of sentencing based on a determinate sentencing model under which the individual sentenced "must serve the full length of his term [and] parole and the United States Parole Commission are abolished."  *United States v. Scoggins*, 880 F.2d 1204, 1208 (11th Cir. 1989).   The government is arguing that Mr. Killen be sentenced to 274 years' imprisonment or 139 years' impriosnment.   In reality, such a sentence in fact a life sentence without the possibility of parole.  *See, e.g., Henry v. State*, 175 So. 3d 675, 679, 680 (Fla. 2015); *Gridine v. State*, 175 So. 3d 672, 673 (2015).

Patrick, a young, immature, first-time offender, was convicted of non-violent offenses.   None of the offenses involved violence or the threat of violence.   Patrick never touched any of the victims involved, and in fact, he was never in the same room with or anywhere near any of the victims.   Patrick's convictions stem from his actions on social media.   Patrick established an account on a mobile phone app called Kik that allowed him to instant message and share pictures with other Kik users.   On Kik, Patrick pretended to be a teenage girl and he coerced teenage boys into sending him nude pictures of themselves.   In addition, he downloaded child porn videos from an adult in Europe.   None of the conduct was violent.

Patrick was just a teenager when he began his conduct and his maturity level was even lower than that.   (DE 148:55).   The testimony from government witness Yohel Diaz indicated that on September 11, 2009, Patrick Killen Jr. created a skype

9

profile under the username Rebecca Till with the email BeverlyHills05@live.com. (DE 143:33,34).   Patrick Killen Jr. was born in May of 1993.   Thus, on September 11, 2009, Patrick Killen, Jr. would have been just sixteen years old.   Rebecca Till and Beverly Hills05 are two of the aliases used by Patrick Killen Jr. in the commission of his offenses. An initial comparison of the severity of the offense, a non-violent offense committed by a youthful, immature first-time offender, with the severity of the sentence, a 139-year sentence (a life term really) without the possibility of parole, presents an extraordinary case and leads to a clear "inference of gross disproportionality."   *See United States v. Farley*, 607 F.3d 1294, 1343-44 (11th Cir. 2010).

The Sentencing Commission also prepared a special report to Congress focusing on the sentencing of child pornography defendants.   *See* United States Sentencing Commission, ***2012 Report to Congress: Federal Child Pornography Offenses*** (December 2012).   Although the report mainly dealt with non-production guidelines, U.S.S.G. § 2G2.2, the Commission did touch briefly on production cases, § 2G2.1, as well.   *Id*. at 330.   The Commission noted that most production defendants "had sexual contact with a prepubescent minor."   *Id*.   The Commission further noted that a "minority of offenders, however, did not engage in any physical contact with their victims, and a subset of those offenders were never physically present with their victims because they caused the production of child pornography remotely (e.g., via webcam or through email)."   *Id*.   Patrick was convicted of production, but he did so remotely and with teenagers and not with any prepubescent children.   Patrick

thus belongs a subset of a subset that encompasses the least culpable of production defendants.   Yet the Commission notes that the average sentence for all production defendants, most of which are substantially more culpable than Patrick, was 274 months, one sixth of the sentence imposed on Patrick.   *See id.*   *Cf. United States v. Johnson*, 451 F.3d 1239, 1244 (11th Cir. 2006) (affirming 140-year sentence for middle age man convicted of producing child pornography where defendant had prior convictions for lewd acts with children and underlying offense included defendant's sexual abuse of pre-pubescent boys over a span of several years and recording and distributing images of the sexual abuse).

That initial inference is confirmed by a comparison of sentences in the Southern District of Florida and sentences for similar offenses nationally.   The Sentencing Commission studies the length of imprisonment by primary offense category for each fiscal year.   For fiscal year 2015, it reviewed a total of 1,971 sentences in the Southern District of Florida for defendants sentenced to a term of imprisonment.   For those 1,971 sentences, the mean sentence was 56 months' imprisonment and the median sentence was 33 months' imprisonment.   For the 34 child pornography sentences, the mean sentence was 114 months' imprisonment and the median sentence was 94 months' imprisonment.   For the 25 extortion sentences, the mean sentence was 129 months' imprisonment and the median sentence was 90 months' imprisonment.   Nationally, the 1,858 sentences for child pornography had a mean sentence of 157 months' imprisonment and a median sentence of 97 months' imprisonment.   Nationally, the 915 sentences for extortion had a mean sentence of

86 months' imprisonment and a median sentence of 60 months' imprisonment. U.S.S.C. Statistical Information Packet, Fiscal Year 2015, Southern District of Florida, Table 7, available at www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2015/fls15.pdf (last visited Jan. 26, 2017).

By contrast, a sentence of 1,668 months' imprisonment, when compared to all sentences in the Southern District of Florida, sentences for child pornography and extortion in the Southern District of Florida, sentences for child pornography and extortion nationally, even in the aggregate, is grossly disproportional. Mr. Killen's sentence is 30 times higher (a 3,000 % increase) over the mean sentence in the district, 10 time higher (a 1,000% increase) over the mean sentence for child porn cases nationally and almost 20 times higher (a 2,000 % increase) over the mean sentence for extortion cases nationally. Mr. Killen was not convicted of sexual abuse and his offenses do not rise to the level of sexual abuse, but even when compared to sentences for sexual abuse, a crime substantially more severe than Mr. Killen's crimes, his sentence is nearly nine time higher (900 % increase) over the mean sentence for sexual abuse in the Southern District of Florida and 13 times higher (a 1,300 % increase) than sexual abuse sentences nationally for fiscal year 2015. Even comparing the sentence to sentences for murder, Mr. Killen's sentence is nearly 6 times greater than the mean sentence for murder nationally. Because this comparison demonstrates that Mr. Killen's sentence is grossly disproportionate, his sentence is cruel and unusual in violation of the Eighth Amendment. *See Graham*,

130 S. Ct. at 2022.

Application of the categorical classification also serves to confirm the unconstitutional nature of the punishment imposed on Mr. Killen.  Although the categorical classification was historically applied in the death penalty context, the Supreme Court in Graham applied that classification to a term-of-years sentence. *Graham*, 130 S. Ct. at 2022.    Specifically, the Supreme Court held that the "Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit a homicide."  *Id.* at 2034.   Although Patrick does not fit neatly into that category, the categorical prohibition announced in *Graham*, and the reasoning behind that prohibition, serve to reinforce the conclusion that the life without parole sentence imposed by the district court on a young, immature first-time offender convicted of a non-violent offense violates the Eighth Amendment.

As noted above, the sentence imposed by the district court is in fact a life sentence without the possibility of parole.   Federal sentencing law requires Patrick to serve the full term of his imprisonment, a physiological impossibility, and, by virtue of the elimination of parole, there is no realistic opportunity for him to obtain release before the end of that term.   It is also very clear that Patrick did not commit a homicide, or anything close to a homicide.    In fact, Patrick was convicted of non-violent offenses.

Patrick was a teenager when he opened an account on the mobile phone app Kik pretending to be a teenage girl.   He was a teenager when he duped teenage boys into sending him nude pictures of themselves via Kik.   Patrick had many of the

same characteristics attributed to juvenile offenders.   In fact, there was evidence he was just sixteen when he started.   (DE 143: 153).   As noted in prior filings (Defendant's Sealed Sentencing Memorandum), Patrick suffered significant physical, emotional and psychological trauma at an early age that resulted in a lower maturity level for his age.   In fact, the magistrate judge noted Patrick's noticeable lack of maturity at the suppression hearing.

In *Graham*, the Court was dealing with a teenager who was just a month shy of his 18th birthday and who, along with other teens, was involved in an armed home invasion in which the teen held a gun to a victim.   The same teen had previously been convicted as an adult for a violent burglary that resulted in the beating of a restaurant manager in the head with a metal bar.   130 S. Ct. at 2018-2020.   The Florida court sentenced the teen to life.   *Id.* at 2020.   Florida, like the federal government, abolished parole so that "a life sentence gives the defendant no possibility of release unless he is granted executive clemency."   *Id.*

In adopting a categorical prohibition on such a sentence, the court examined "the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question," and "whether the challenged sentencing practice serves legitimate penological goals."   *Id.* at 2026.   The Court noted that juveniles have a lessened culpability and are less deserving of the most severe punishments.   *Id.* (citing *Roper v. Simmons*, 543 U.S. 551, 569, 125 S. Ct. 1183 (2005)).   Patrick was essentially the same age as the defendant in *Graham*. In addition, Patrick's lack of maturity raises the same culpability questions

14

addressed in *Graham*.

Examining the nature of the offense as an added part of the calculus, the Court drew a distinction between murder and other offenses. The Court then concluded that, "when compared to an adult murderer, a juvenile offender who did not kill or intend to kill has a twice diminished moral culpability." *Id.* at 2027. Patrick, who was convicted of non-violent offenses, has an even greater diminished moral culpability.

The Court then noted that "life without parole is 'the second most severe penalty permitted by law.'" *Id.* (quoting *Harmelin*, 501 U.S. at 1001, 111 S. Ct. 2680). Life without parole "means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of the convict, he will remain in prison for the rest of his days." *Id.* (internal quotations omitted). A sentence of life without parole is an even harsher sentence for a young person, such as Patrick, because the young person "will on average serve more years and a greater percentage of his life in prison" than an older offender. *Id.* at 2028.

Turning to penological justifications, the Court held that "[w]ith respect to life without parole juvenile non-homicide offenders, none of the goals of penal sanctions that have been recognized as legitimate – retribution, deterrence, incapacitation, and rehabilitation – provides an adequate justification." *Id.* (internal citations omitted). That same reasoning applies with equal force here. A life without parole sentence unjustly denies Patrick the ability "to demonstrate growth and maturity' during his

15

imprisonment.  *See id.*   Such a sentence clearly violates the Eighth Amendment.


Respectfully submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

BY:     *s/Bernardo Lopez*_____
Bernardo Lopez
Assistant Federal Public Defender
Florida Bar No. 884995
One East Broward Boulevard, Suite 1100
Fort Lauderdale, Florida 33301
Tel: (954) 356-7436
E-Mail: Bernardo_Lopez@fd.org

16

**CERTIFICATE OF SERVICE**

I HEREBY certify that on __August 24, 2018__, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.   I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/Bernardo Lopez*
Bernardo Lopez

17